**DIRECTV, INC.**

v.

**Marc ROBSON**

**No. CIV.A. 04–0269–A.**

United States District Court,
W.D. Louisiana,
Alexandria Division.

July 27, 2004.

---

**46.** Rec. Doc. No. 14.

**47.** Rec. Doc. No. 17.

Katherine M Loos, Briney & Foret, Lynn Reynolds Arceneaux, Briney & Foret, Stacy Diane Saltzman, Briney & Foret, Lafayette, LA, for DirecTV Inc, Plaintiff.

Donald B Cameron, Slidell, LA, for Marc Robson, Defendant.

## RULING

DRELL, District Judge.

Before the Court is the Motion for Summary Judgment [Doc. No. 9] filed by Marc Robson ("Defendant") pursuant to FED R. CIV. P. 56, and a response [Doc. No. 33] by DIRECTV, Inc. ("Plaintiff" or "DTV"). The Court finds that oral argument is not necessary. After granting Plaintiff additional time for discovery, the record is complete enough for this Court to rule. For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED and this suit is hereby DISMISSED WITH PREJUDICE.

## BACKGROUND

The instant litigation involves two federal statutes: 1) The Cable Communications Policy Act of 1984 (specifically 47 U.S.C. § 605), and 2) the Electronic Communications Policy Act of 1986 (specifically 18 U.S.C. §§ 2511, and 2520). Generally, the facts involve the alleged possession and use of allegedly illegal devices designed to intercept and decrypt DTV's satellite communications.

Plaintiff is a company in the business of selling television broadcasts. This programming is distributed to homes through the use of a fixed outdoor satellite dish. The dish is connected to a receiver inside the patron's home by a cable, which cable is connected to a television.

Not everyone with a satellite dish can receive Plaintiff's programming. DTV uses encryption technology to ensure there is no illicit interception of the broadcast-

ing. This encryption technology scrambles the broadcasting so only individuals with a DTV satellite receiver can view the shows. Each satellite receiver contains an access card that tells the receiver what channels to unscramble. Thus, Plaintiff is able to tailor its patrons' programming according to their preferences, and the amount of money they are willing to pay.

Despite Plaintiff's extensive measures to protect its assets, there are individuals who, with the help of certain devices, have developed the capacity to intercept and unscramble DTV programming without DTV's permission. Upon suspicion that people were obtaining pirated access cards and equipment to program or "unloop" access cards illicitly, Plaintiff executed writs of seizure on various dates and places to seize materials that would lead them to the names of the alleged perpetrators. With the help of local law enforcement, Plaintiff conducted "raids" at various mail shipping facilities. During and subsequent to the raids, Plaintiff came upon evidence, including orders, invoices, electronic communications, shipping documentation, purchase receipts, credit card receipts, and customer lists, which allegedly prove the Defendant purchased pirate access devices.

Specifically, Plaintiff avers Defendant purchased a PS2 Plus SU2 Unlooper and a PS2 Plus Unlooper ("unloopers") using interstate or foreign wire facilities and receiving orders through the United States Postal Service or commercial mail carrier. Unloopers are designed to repair access cards that have been rendered unusable by illegitimate use, and are capable of programming access devices.

DTV also has circumstantial evidence Defendant was in possession of an "emulator." Allegedly, the primary purpose of

an emulator is to circumvent DTV access controls. The emulator is a small, electronic device, which is approximately the same size as a DTV access card.

Plaintiff also avers that Defendant illegally manufactured, assembled, or modified pirate access devices by using these unloopers to program access cards to receive free satellite transmissions, and further that he displayed satellite programming without its authorization. Plaintiff further claims this activity qualifies as willful assembly or modification as defined under 47 U.S.C. § 605(e)(4). Based on these beliefs, Plaintiff argues Defendant has violated federal law and brings this suit seeking damages and injunctive relief.[1]

Defendant proclaims that he is a technical consultant who needs to stay apprised of the latest technology, and that he had a legitimate use for owning the equipment because Lotus (with which Defendant professes to be involved in his work) implements smart card technology in its operations. Finally, Defendant strongly denies ever using the equipment illicitly, and claims possession of these types of equipment alone does not raise enough of an inference for Plaintiff to survive summary judgment. I agree.

## ANALYSIS

### I. Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party

must set forth specific facts showing there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2511. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *See id.* Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* If the evidence is such that a reasonable fact finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* at 255, 106 S.Ct. at 2513. Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* at 323, 106 S.Ct. 2552; *see also* FED. R. CIV. P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See Matsushita,* at 585–87, 106 S.Ct. 1355, 1356; *Wise v. E.I. DuPont De Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995). Ordinarily, the court must accept the evidence of the nonmoving party and draw all *justifiable* inferences in favor of that party. *See Matsushita,* at 585–87, 106 S.Ct. at 1355, 1356.

Nevertheless, the Court has no duty to search the record for triable issues. *See*

---

**1.** Plaintiff has voluntary dismissed Counts 3 and 5. [*See* Doc. No. 39]

*Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." *Id.* A party may not rely on "unsubstantiated assertions" as competent summary judgment evidence. *Id.*

## A. Counts 1 and 2

Count 1 of the Complaint is brought pursuant to 47 U.S.C. § 605(a).[2] Congress explicitly provided a private right of action for certain violations of 47 U.S.C. § 605 in section (e)(3), which provides that any "person aggrieved by any violation of subsection (a) of this section or paragraph (4) of this section may bring a civil action in a United States district court or in any other court of competent jurisdiction." A person aggrieved is:

> any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming, and, in the case of violation of paragraph (4) of subsection (e) of this section, shall also include any person engaged in the lawful manufacture, distribution, or sale of equipment necessary to authorize or receive satellite cable programming.

47 U.S.C. § 605(d)(6). For purposes of this motion I believe and will assume DTV is a "person" with proprietary rights in its satellite programming.

Count 2 of the Complaint is brought pursuant to 18 U.S.C. § 2511.[3] It is gen-

---

**2.** In Count I of the complaints, Plaintiff charges that the Defendants *received* DTV's satellite transmissions in violation of 47 U.S.C. § 605(a). That statute provides in relevant part:

> (a) Practices Prohibited.
> [N]o person receiving, [or] assisting in receiving ... any interstate ... communication by wire ... shall divulge or publish the ... contents ... thereof, except through authorized channels of ... reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communication centers over·which the communication may be passed, (4) to the master of a ship of whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the ... contents ... of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any informa-

tion therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).

**3.** The relevant portion of § 2511 is subsection (1). It provides:

> (1) Except as otherwise specifically provided in this chapter any person who—
> (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral or electronic communication;
> (b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic mechanical, or other device to intercept any oral communication when—
> (i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or
> (ii) such device transmits communications by radio, or interferes with the transmission of such communication; or
> (iii) such person knows, or has reason to know, that such device or any component thereof has been sent through the mail or transported in interstate or foreign commerce; or
> (iv) such use or endeavor to use (A) takes place on the premises of any business or

erally accepted that portions of § 2511 are covered by § 2520. Section 2520(a) is the section under Chapter 119 of the Electronic Communications Policy Act of 1986 that sets forth what behavior is subject to a private right of action. It provides:

> Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is *intercepted,* disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520(a) (emphasis added). Thus, the pivotal issue for Counts 1 and 2 is whether DTV has submitted sufficient evidence to the Court to show there is a genuine issue of material fact regarding whether Defendant actually intercepted and/or unlawfully appropriated its satellite transmission.

After an additional 45 days in which to conduct discovery, Plaintiff has failed to provide evidence creating these genuine issues of material fact. The Court has

other commercial establishment of the operations of which affect interstate or foreign commerce; or (B) obtains or is for the purpose of obtaining information relating to the operations of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or

(v) such person acts in the District of Columbia, the Commonwealth of Puerto Rico, or any territory or possession of the United States;

(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic

received: (1) Voluminous documentation regarding the nature of www.pirated-en.com; (2) affidavits of "experts" averring there are no legitimate uses for unloopers or emulators; (3) a copy of a "Card Unlooping" website; (4) a deposition of Defendant; (5) an invoice purporting to show Defendant purchased unloopers; (6) electronic documentation purporting to show Defendant was a member of www.pirated-en.com; (7) electronic documentation purporting to show Defendant made a web post in which he requested instruction on how to assemble an emulator; and (8) a Judgment written by Judge Melancon, also of the Western District of Louisiana.

■ Despite DTV's multitudinous submissions, there is no evidence in these submissions to show Defendant intercepted Plaintiff's satellite programming. Defendant denies ever having possession of DTV satellite equipment. Plaintiff does not dispute this contention. After ample time for discovery, Plaintiff's only relevant evidence is circumstantial evidence purporting to show Defendant made a web posting in which he requested assistance in

communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; or

(e) (i) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, intercepted by means authorized by sections 2511(2)(a)(ii), 2511(2)(b)-(c), 2511(2)(e), 2516, and 2518 of this chapter, (ii) knowing or having reason to know that the information was obtained through the interception of such communication in connection with a criminal investigation, (iii) having obtained or received the information in connection with a criminal investigation, and (iv) with intent to improperly obstruct, impede, or interfere with a duly authorized criminal investigation, shall be punished in subsection (4) or shall be subject to suit as provided in subsection (5).

assembling an emulator.[4] Additionally, Plaintiff has failed to show the Court that it is possible for Defendant to intercept its signal, given that he does not have possession of a DTV satellite dish.

Plaintiff seeks to rely on a Judgment by Judge Tucker Melancon of the Lafayette Division of this District. Judge Melancon earlier was assigned a substantial number of DTV claims, many of which were severed and reallocated. Plaintiff argues that Judge Melancon's language, "computer records that show the purchase and installation of equipment designed to unlawfully intercept electronic communications will suffice to create a rebuttable presumption of a violation of Section 605" [Doc. No. 38, Exhibit F], is determinative of these facts. The reliance on this language is out of context. The very next sentence provides: "The Court finds as a matter of law that a plaintiff must demonstrate the violation of Section 605 by setting forth the evidence of actual interception." [Id.] There is no evidence in the record setting forth a genuine issue of material fact proving the allegation that Defendant intercepted DTV's satellite programming. Mere possession of unloopers and emulators is insufficient to raise an inference of illicit use of these devices.

The Court is confident that Plaintiff may disagree with the foregoing. After all, as Plaintiff would argue, if there are no known legitimate uses for unloopers or emulators, what other possible explanation could there be for their possession by Defendant other than the illicit access of DTV programming? In summary judgment law, there must be a genuine issue of material fact to defeat a motion, and as I read the relevant statutes, that material fact in this particular case must go to *interception* of satellite transmissions, not mere ownership of "pirate access devices." Therefore, with regard to Counts 1 and 2, none of the evidence provided is sufficient to allow Plaintiff to survive this motion for summary judgment.

Aside from the foregoing, Plaintiff has one additional salvo—that pirateden.com posting. While, for summary judgment purposes, the Court must assume the web posting was written by Defendant, it still does not raise an inference of interception. At first blush, however, it may raise a justifiable inference as to assembly of equipment designed to intercept Plaintiff's satellite communications. This brings us to Count 4.

## B. Count 4

For Count 4 of the Complaint (whether DTV has standing under 47 U.S.C. 605(e)(4)), standing depends on Plaintiff's having raised a genuine issue of material fact as to whether Defendant manufactured, assembled, or modified a device knowing its only purpose was to intercept satellite programming. *See* 47 U.S.C. § 605(e)(4)[5]. "Satellite cable program-

---

4. The following is allegedly a web posting by a person with the user name of dobson, who had the same e-mail address Defendant used when purchasing his unloopers:

> "Just got my mc1489 chip and putting together an emulator. But haven't done anything like this before.
> When placing the chip into the pcb does the copper side go up or down? thanks (sic)".
> Doc. No. 38, Exhibit No. B–1.

5. Specifically, 47 U.S.C. § 605(e)(4) provides:

> Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a) of this section, shall be fined not more than $500,000 for each violation, or imprisoned for not

ming" is defined by 47 U.S.C. § 605(d)(1), which provides: "[T]he term 'satellite cable programming' means video programming which is transmitted via satellite and which is primarily intended for the direct receipt by cable operators for their retransmission to cable subscribers[.]"

■ Even assuming the web post was made by Defendant, his assembly of the emulator is not actionable under § 605(e)(4). Section 605(e)(4) is a provision relating to manufacturers and sellers, rather than to individual users as Defendant is alleged to be. *See Cmty. Television Sys., Inc. v. Caruso*, 284 F.3d 430, 435 n. 6 (2d Cir.2002). The problem is one for congressional, and not judicial, intervention. Summary judgment is, therefore, appropriate on Count 4, also.

### CONCLUSION

After ample time for discovery, Plaintiff has failed to demonstrate a genuine issue of material fact on any of the remaining Counts, and Defendant is therefore entitled to judgment as a matter of law. As Counts 3 and 5 have been voluntarily dismissed by Plaintiff, *see supra* note 1, Defendant's motion is GRANTED as to all remaining Counts, and this suit is hereby DISMISSED WITH PREJUDICE.

---

more than 5 years for each violation, or both. For purposes of all penalties and remedies established for violations of this paragraph, the prohibited activity established herein as it applies to each such device shall be deemed a separate violation.
Id.